UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY_____D.C.
MAR 14 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

CASE NO.: 23-CR-60170-SCOLA(S)
18 U.S.C. § 371
15 U.S.C. § 645(a)
18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

ALEXANDRA ACOSTA and
VILSAINT ST LOUIS,

        Defendants.
_____/

## SUPERSEDING INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At times relevant to this Indictment:

### *The Small Business Administration*

1. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2. As part of this effort, the SBA enabled and provided loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.

### *The Paycheck Protection Program*

3. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic. One source of relief that the CARES Act provided was the Paycheck Protection Program ("PPP"), which authorized forgivable loans to small businesses for job retention and certain other expenses.

4. The SBA promulgated regulations concerning eligibility for a PPP loan. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation on February 15, 2020, and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. Payments to independent contractors are typically reported to the Internal Revenue Service ("IRS") on a "Form 1099-MISC." In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

5. In addition, a business applying for a PPP loan was required to provide documentation showing its payroll expenses. This payroll information was material to the application because, pursuant to statutory requirements and implementing regulations, the amount of the loan that typically could be approved was a function of the applicant's historical payroll

2

costs, consisting of compensation to its employees whose principal place of residence was the United States, subject to certain exclusions.

6. Individuals who operated a business under a "sole proprietorship" business structure were eligible for a PPP loan. To qualify for such a PPP loan, individuals had to report and document their income and expenses from the sole proprietorship. Sole proprietorships typically report their income and expenses yearly to the IRS on a "Form 1040, Schedule C." As with other PPP loans, this information and supporting documentation was used to calculate the amount of money the individual was entitled to receive under the PPP. The maximum PPP loan amount for a sole proprietor with no employees was $20,833.

7. PPP loan applications were processed by participating lenders and third-party loan processors. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While it was the participating lender that issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

8. After the lender funded the PPP loan to the borrower, the lender submitted disbursement details into the SBA E-Tran system with servers located in Sterling, VA. The SBA's Denver Finance Center, located in Denver, Colorado, created payment files and authorized payments of the PPP processing fee to the lender through the Financial Management System to the Treasury. The primary server for the Financial Management System is in Sterling, VA. The PPP processing fee varied depending on the amount of the loan. Once created, the payment files were then transmitted via wire to the U.S. Treasury disbursing office in Kansas City, Missouri,

which, in turn, sent instructions for payment of funds to the Federal Reserve Bank Automated Clearing House processing site in East Rutherford, New Jersey.

9. The proceeds of a PPP loan could be used only for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments for the business. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, or jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

10. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the borrower utilized 60% of the loan in the 24 weeks post-disbursement toward payroll costs and utilized the remaining 40% on qualified expense items (e.g., mortgage, rent, and utilities).

11. Applying for PPP loan forgiveness was a separate process that required additional affirmations that the applicant satisfied the eligibility for PPP loan forgiveness. If forgiveness was approved, the SBA would pay the remaining balance of the loan to the participating lender. Whatever portion of the PPP loan was not forgiven was serviced as a loan.

### The Defendants

12. **ALEXANDRA ACOSTA** was a resident of Broward County, Florida, and full-time employee of THE Broward County Sheriff's Office.

13. **VILSAINT ST LOUIS** was a resident of Broward County, Florida, and President and Chief Executive Officer of Victory Tax Inc., a Florida Corporation.

14. **ALEXANDRA ACOSTA** was a tax client of Victory Tax Inc. and **VILSAINT ST LOUIS** from at least on or about January 2019 through April 2021.

4

**Relevant Lender, Loan Processor, and Entity**

15. Lender 1 was a participating lender in the PPP, and was based in Fort Lee, New Jersey.

16. Loan Processor 1 was a third-party loan processor, based in Jersey City, New Jersey, that processed PPP loan applications for Lender 1.

17. Realtor Company 1 was a Florida Limited Liability Company. T.C. was the President of Realtor Company 1.

### COUNT 1
### (Conspiracy to Defraud the United States)
### 18 U.S.C. § 371

18. Paragraphs 1 through 17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

19. From in or about January 2021, through in or about June 2021, the exact dates being unknown to the Grand Jury, in Broward County, Florida, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDRA ACOSTA and VILSAINT ST LOUIS,**

did knowingly make a false statement to the Small Business Administration for the purpose of obtaining money and influencing in any way the Small Business Administration, that is, false statements within **ALEXANDRA ACOSTA**'s PPP loan application and PPP loan forgiveness application, in violation of Title 15, United States Code, Sections 645(a) and 2.

**PURPOSE OF THE CONSPIRACY**

20. It was the purpose of the conspiracy for **ALEXANDRA ACOSTA** and **VILSAINT ST LOUIS** to unlawfully obtain PPP relief funds—made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic—for

**ALEXANDRA ACOSTA** by: (a) submitting and causing the submission of a false and fraudulent application for a PPP loan; and (b) submitting and causing the submission of a false and fraudulent application for forgiveness of a PPP loan.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which **ALEXANDRA ACOSTA** and **VILSAINT ST LOUIS** sought to accomplish the purpose of the conspiracy included, among other things, the following:

21. **ALEXANDRA ACOSTA** and **VILSAINT ST LOUIS** submitted and caused the submission of a materially false and fraudulent application for a PPP loan to the SBA, Lender 1, and Loan Processor 1, which contained materially false and fraudulent information as to defendant **ALEXANDRA ACOSTA**'s monthly payroll, gross revenue, and the purpose for the loan, among other things.

22. **ALEXANDRA ACOSTA** and **VILSAINT ST LOUIS** submitted and caused the submission of materially false and fraudulent information and documentation in support of the application for the PPP loan, including falsified Internal Revenue Service tax forms, such as a Schedule C and Form 1099-MISC, among other things.

23. As a result of the false and fraudulent PPP loan application submitted as part of this scheme, on or about February 4, 2021, Lender 1 approved PPP loan number 1554728404 for **ALEXANDRA ACOSTA**, and disbursed the loan proceeds in the approximate amount of $20,180 to **ALEXANDRA ACOSTA** at SunTrust Bank account number ending in 7279 in the name of **ALEXANDRA ACOSTA**.

24. In furtherance of the scheme and artifice, **ALEXANDRA ACOSTA** and **VILSAINT ST LOUIS** submitted and caused the submission of materially false and fraudulent information to the SBA and Lender 1 to cause and attempt to cause the forgiveness of PPP loan

number 1554728404 to which **ALEXANDRA ACOSTA** was not entitled.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the purpose thereof, at least one of the coconspirators committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

25. From in or about January 2021, through June 2021, **ALEXANDRA ACOSTA** and **VILSAINT ST LOUIS** made and caused others to make materially false and fraudulent statements to the SBA, Lender 1, and Loan Processor 1.

### *Materially False and Misleading Statements*

a. That **ALEXANDRA ACOSTA** was compensated $103,255 by Realtor Company 1 in 2019, as represented in a false Miscellaneous Income Form 1099;

b. That **ALEXANDRA ACOSTA** was a sole proprietor doing business as Realtor Company 1 in 2019, as represented in a false Schedule C Form 1040;

c. That **ALEXANDRA ACOSTA** had $103,255 in gross receipts or sales in 2019 for her sole proprietorship;

d. That **ALEXANDRA ACOSTA** had $6,389 in supply expenses in 2019 for her sole proprietorship;

e. That **ALEXANDRA ACOSTA** had a net profit of $96,866 in 2019 for her sole proprietorship;

f. That **ALEXANDRA ACOSTA**'s average monthly payroll in 2019 was $8,072 for her sole proprietorship;

g. That the purpose of the PPP loan was for approved expenditures under the PPP program;

h.  That the PPP loan funds were used on the approved expenditures under the PPP program.

26.  As a result of **ALEXANDRA ACOSTA** and **VILSAINT ST LOUIS**'s material misrepresentations regarding the 2019 business income of **ALEXANDRA ACOSTA** and the intended and actual use of the relief funds, from in or around January 2021, through in or around June 2021, **ALEXANDRA ACOSTA** and **VILSAINT ST LOUIS** falsely and fraudulently caused Lender 1 to disburse $20,180 in fraudulent PPP funds to **ALEXANDRA ACOSTA** and caused the SBA to pay the balance of the loan to Lender 1 based on the fraudulent application for forgiveness.

All in violation of Title 18, United States Code, Section 371.

## COUNT 2
### False Statement to the SBA
### (15 U.S.C. § 645(a))

27.  Paragraphs 1 through 17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about February 3, 2021, in Broward County, Florida, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDRA ACOSTA and VILSAINT ST LOUIS,**

did knowingly make a false statement to the Small Business Administration for the purpose of obtaining money and influencing in any way the Small Business Administration, that is, false statements within **ALEXANDRA ACOSTA**'s PPP loan application, in violation of Title 15, United States Code, Sections 645(a) and 2.

## COUNT 3
### False Statement to the SBA
### (15 U.S.C. § 645(a))

28.     Paragraphs 1 through 17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about April 21, 2021, in Broward County, Florida, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDRA ACOSTA and VILSAINT ST LOUIS,**

did knowingly make a false statement to the Small Business Administration for the purpose of obtaining money and influencing in any way the Small Business Administration, that is, false statements within **ALEXANDRA ACOSTA**'s PPP loan forgiveness application, in violation of Title 15, United States Code, Sections 645(a) and 2.

## COUNT 4
### Wire Fraud
### (18 U.S.C. § 1343)

29.     Paragraphs 1 through 17 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

30.     From in or around January 2021, through in or around June 2021, the exact dates being unknown to the Grand Jury, in Broward County, Florida, in the Southern District of Florida, and elsewhere, the defendants,

**ALEXANDRA ACOSTA and VILSAINT ST LOUIS,**

did knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and, for the purpose of executing the scheme and

artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE SCHEME AND ARTIFICE

31.     Paragraph 20 of Count 1 is realleged and incorporated herein by reference.

### THE SCHEME AND ARTIFICE

Paragraphs 21-24 of Count 1 are realleged and incorporated herein by reference.

### USE OF WIRES

32.     On or about February 4, 2021, in Broward County, Florida, the Southern District of Florida, and elsewhere, the defendants, **ALEXANDRA ACOSTA** and **VILSAINT ST LOUIS**, for the purpose of executing and in furtherance of the aforesaid scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly cause to be transmitted in interstate commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, that is, the transmission of an Automated Clearing House payment in the amount of approximately $20,180 from Lender 1 to SunTrust Bank account number ending in 7279, in the name of **ALEXANDRA ACOSTA**, in the Southern District of Florida and elsewhere.

In violation of Title 18, United States Code, Section 1343.

### FORFEITURE ALLEGATIONS

1.      The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain

property in which the defendants, **ALEXANDRA ACOSTA** and **VILSAINT ST LOUIS**, have an interest.

2. Upon conviction of a violation of Title 18, United States Code, Section 1343, as alleged in this Indictment, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____ BRUCE O. BROWN
For MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
TREVOR C. JONES
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: _____

v.

ALEXANDRA ACOSTA et al.,

_____/
Defendants.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No)  Yes
Number of New Defendants  1
Total number of counts  4

**Court Division** (select one)
☒ Miami   ☐ Key West   ☐ FTP
☐ FTL     ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.

3. Interpreter: (Yes or No) No
   List language and/or dialect: _____

4. This case will take  5  days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)                    (Check only one)
   I    ☒ 0 to 5 days                  ☐ Petty
   II   ☐ 6 to 10 days                 ☐ Minor
   III  ☐ 11 to 20 days                ☐ Misdemeanor
   IV   ☐ 21 to 60 days                ☒ Felony
   V    ☐ 61 days and over

6. Has this case been previously filed in this District Court? (Yes or No) Yes
   If yes, Judge  Scola   Case No. 23-CR-60170

7. Has a complaint been filed in this matter? (Yes or No) Yes
   If yes, Magistrate Case No. 24-mj-06078-STRAUSS

8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____  Case No. _____

9. Defendant(s) in federal custody as of  N/A
10. Defendant(s) in state custody as of  N/A
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No)  No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No)  No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?  No

By: _____
Trevor C. Jones
Assistant United States Attorney
FL Bar No.    0092793

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name:  ALEXANDRA ACOSTA

Case No:  23-CR-60170-SCOLA(s)

Count #: 1

Conspiracy to Defraud the United States, Title 18, United States Code, Section 371

* Max. Term of Imprisonment: 5 years
* Mandatory Min. Term of Imprisonment (if applicable): n/a
* Max. Supervised Release: 3 years
* Max. Fine: $250,000

Counts #: 2-3

False Statement to SBA, Title 15, United States Code, Section 645(a)

* Max. Term of Imprisonment: 2 years
* Mandatory Min. Term of Imprisonment (if applicable): n/a
* Max. Supervised Release: 1 year
* Max. Fine: $5,000

Count #: 4

Wire Fraud, Title 18, United States Code, Section 1343

* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): n/a
* Max. Supervised Release: 3 years
* Max. Fine: $250,000

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

Defendant's Name: VILSAINT ST LOUIS

Case No: 23-CR-60170-SCOLA(s)

Count #: 1

Conspiracy to Defraud the United States, Title 18, United States Code, Section 371

* Max. Term of Imprisonment: 5 years
* Mandatory Min. Term of Imprisonment (if applicable): n/a
* Max. Supervised Release: 3 years
* Max. Fine: $250,000

Counts #: 2-3

False Statement to SBA, Title 15, United States Code, Section 645(a)

* Max. Term of Imprisonment: 2 years
* Mandatory Min. Term of Imprisonment (if applicable): n/a
* Max. Supervised Release: 1 year
* Max. Fine: $5,000

Count #: 4

Wire Fraud, Title 18, United States Code, Section 1343

* Max. Term of Imprisonment: 20 years
* Mandatory Min. Term of Imprisonment (if applicable): n/a
* Max. Supervised Release: 3 years
* Max. Fine: $250,000

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.